Stephanie E. Kaiser (Texas Bar I.D. 24013633)
Dickinson Wright PLLC
607 W. 3rd Street, Suite 2500
Austin, Texas 78701
(512) 770-4220 / (844) 670-6009 (Fax)
skaiser@dickinson-wright.com

*Attorneys for FBN Finance, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| *In re:* | § | |
| | § | CASE NO. 23-42293-MXM-7 |
| TIMOTHY BANKS, | § | CHAPTER 7 CASE |
| *Debtor.* | § | |

| | | |
|---|---|---|
| FBN FINANCE, LLC, | § | |
| *Plaintiff,* | § | |
| | § | |
| *vs.* | § | ADV. NO. _____ |
| | § | |
| TIMOTHY BANKS, | § | |
| *Defendant.* | § | |

## FBN FINANCE, LLC'S ORIGINAL COMPLAINT TO
## OBJECT TO DISCHARGE UNDER 11 U.S.C. § 523

FBN Finance, LLC ("Plaintiff," "FBN Finance," or "Lender"), plaintiff in the above-captioned adversary proceeding (the "Adversary Proceeding"), by and through its undersigned counsel, files this its Original Complaint to Object to Discharge under 11 U.S.C. § 523 (the "Complaint"), objecting to Timothy Banks' ("Debtor" or "Defendant") proposed discharge, and seeking judgment for an exception to charge of FBN Finance, LLC's debt and the other relief set forth herein, and in support of same would respectfully show the Court as follows:

## I.  PARTIES

1.      Debtor is an individual residing in Arlington, Texas.

2.      Plaintiff is a Delaware limited liability company with its principal place of business in

San Carlos, California.

## II.  JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b) because

this is a civil proceeding that arises under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), 523 (a)(4), and

523(a)(6).

4.      This is a core proceeding that may be heard and determined by this Court pursuant to

28 U.S.C. § 157(b)(2)(I) because this Complaint seeks a determination as to the dischargeability of

certain debts.

5.      Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1409(a)

because this proceeding arises under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), 523 (a)(4), and

523(a)(6) and Debtor's bankruptcy case is pending in this district.

## III.  BACKGROUND

6.      Debtor filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code

(the "Chapter 7 Case") on August 1, 2023 (the "Petition Date") in the United States Bankruptcy

Court for the Northern District of Texas, Fort Worth Division.

7.      Prior to the Petition Date, Debtor applied for a loan with FBN Finance on January 18,

2022 (the "Application").  In his Application, Debtor represented to FBN FInance, among other

things, that: (a) he was single; (b) began farming in 2018; (c) he farmed in Ellis County, Texas; (d)

his primary commodity was soybean farming; (e) his total asset value was $573,000.00; (f) his total

liability value was $86,000.00; (g) his gross farm annual income for 2021 was $825,000.00; and (h)

his non-farm annual income for 2021 was $96,000.00.  A true and correct copy of the Affidavit of

Mark Troline is attached hereto as "Exhibit A" and is incorporated herein by reference; a true and

correct copy of the Application is attached hereto as "Exhibit B" and is incorporated herein by reference.

8.      In reliance on Debtor's representations, FBN Finance agreed to, and did, loan funds to Debtor.  FBN Finance would not have loaned monies to Debtor if: (a) Debtor did not represent and covenant to use the loan proceeds for farming; (b) Debtor did not have farming income in 2021 reasonably approximate to or greater than the income Debtor represented; and/or (c) FBN Finance had known Debtor's representations in the Application and otherwise were untrue.  Ex. A; Ex. B.

9.      FBN Finance and Debtor entered into a Credit Note effective January 26, 2022 ("First Credit Note").

10.     FBN Finance and Debtor also entered into a Loan and Security Agreement ("First Security Agreement") effective January 26, 2022.  The indebtedness evidenced by this First Credit Note was secured by the liens and security interests described in the Security Agreement.  This First Credit Note and the First Security Agreement together are referred to as the "First Loan."  A true and correct copy of the First Loan is attached hereto as "Exhibit C" and is incorporated herein by reference.

11.     In entering into the First Loan, Debtor represented and agreed that he would use the loan proceeds for certain limited farming purposes and that Debtor specifically would use the proceeds "for general working capital purposes related to the Farm Products described."  Ex. A; Ex. C § 5.7.

12.     Through the First Loan, in reliance on Debtor's representations, FBN Finance agreed to loan Debtor up to $50,000.00.  Ex. A; Ex. C, First Security Agreement § 2.1.1; First Credit Note.

13.     Through the First Loan, Debtor promised to repay to FBN Finance, together with its successors and assigns, the $50,000.00 principal amount, plus all accrued and unpaid interest at the

non-default rate of 5.09% per annum, plus all fees, charges and premiums and all costs and expenses, on or before the March 1, 2023 maturity date.  Ex. A; Ex. C, First Security Agreement § 2.1; First Credit Note §§ 1, 3.

14.    Debtor applied for a second loan from FBN Finance and restated his representations in order to secure same.  In reliance on Debtor's written representations, FBN Finance agreed to lend additional funds to Debtor.  Ex. A.

15.    FBN Finance and Debtor entered into a second Credit Note, effective February 28, 2022 ("Second Credit Note").

16.    FBN Finance and Debtor also entered into a second Loan and Security Agreement (the "Second Security Agreement") effective February 28, 2022.  The indebtedness evidenced by this Second Credit Note was secured by the liens and security interests described in the Second Security Agreement.  The Second Credit Note and the Second Security Agreement together are referred to as the "Second Loan."  A true and correct copy of the Second Loan is attached hereto as "Exhibit D" and is incorporated herein by reference.

17.    In entering into the Second Loan, Debtor represented and agreed that he would use the loan proceeds for certain limited farming purposes and that Debtor specifically would use the proceeds "for general working capital purposes related to the Farm Products described."  Ex. A; Ex. D § 5.7.

18.    Through the Second Loan, in reliance on Debtor's representations, FBN Finance agreed to lend Debtor up to $100,000.00.  Ex. A; Ex. D, Second Security Agreement § 2.1.1; Second Credit Note.

19.    Through the Second Loan, Debtor promised to repay to FBN Finance, together with its successors and assigns, the $100,000.00 principal amount, plus all accrued and unpaid interest at

the non-default rate of 5.64% per annum, plus all fees, charges and premiums and all costs and expenses, on or before the March 1, 2023 maturity date.  Ex. A; Ex. D, Second Security Agreement § 2.1; Second Credit Note §§ 1, 3.

20.     Debtor applied for a third loan from FBN Finance and restated his representations in order to secure same.  Relying on Debtor's written representations, FBN Finance agreed to lend additional funds to Debtor.  Ex. A.

21.     FBN Finance and Debtor entered into a third Credit Note, effective February 28, 2022 ("Third Credit Note").

22.     FBN Finance and Debtor also entered into a third Loan and Security Agreement (the "Third Security Agreement") effective February 28, 2022.  The indebtedness evidenced by this Third Credit Note was secured by the liens and security interests described in the Third Security Agreement.  The Third Credit Note and the Third Security Agreement together are referred to as the "Third Loan."  A true and correct copy of the Third Loan is attached hereto as "Exhibit E" and is incorporated herein by reference.

23.     In entering into the Third Loan, Debtor represented and agreed that he would use the loan proceeds for certain limited farming purposes and that Debtor specifically would use the proceeds "for general working capital purposes related to the Farm Products described."  Ex. A; Ex. E § 5.7.

24.     Through the Third Loan, in reliance upon Debtor's representations, FBN Finance agreed to lend Debtor up to $200,000.00.  Ex. E, Third Security Agreement § 2.1.1; Third Credit Note.

25.     Through the Third Loan, Debtor promised to repay to FBN Finance, together with its successors and assigns, the $200,000.00 principal amount, plus all accrued and unpaid interest at the

non-default rate of 5.64% per annum, plus all fees, charges and premiums and all costs and expenses, on or before the March 1, 2023 maturity date.  Ex. A; Ex. E, Third Security Agreement § 2.1; Third Credit Note §§ 1, 3.

26.      Debtor applied for a fourth loan from FBN Finance and restated his representations. Relying on Debtor's written representations, FBN Finance agreed to lend additional funds to Debtor. Ex. A.

27.      FBN Finance and Debtor entered into a fourth Credit Note, effective May 31, 2022 ("Fourth Credit Note").

28.      FBN Finance and Debtor also entered into a fourth Loan and Security Agreement (the "Fourth Security Agreement") effective May 31, 2022.  The indebtedness evidenced by this Fourth Credit Note was secured by the liens and security interests described in the Fourth Security Agreement.  The Fourth Credit Note and the Fourth Security Agreement together are referred to as the "Fourth Loan."  A true and correct copy of the Fourth Loan is attached hereto as "Exhibit F" and is incorporated herein by reference.

29.      In entering into the Fourth Loan, Debtor represented and agreed that he would use the loan proceeds for certain limited farming purposes and that Debtor specifically would use the proceeds "for general working capital purposes related to the Farm Products described."  Ex. A; Ex. F § 5.7.

30.      Through the Fourth Loan, in reliance upon Debtor's representations, FBN Finance agreed to lend Debtor up to $150,000.00.  Ex. A; Ex. F, Fourth Security Agreement § 2.1.1; Fourth Credit Note.

31.      Through the Fourth Loan, Debtor promised to repay to FBN Finance, together with its successors and assigns, the $150,000.00 principal amount, plus all accrued and unpaid interest at

the non-default rate of 6.79% per annum, plus all fees, charges and premiums and all costs and expenses, on or before the March 1, 2023 maturity date.  Ex. A; Ex. F, Fourth Security Agreement § 2.1; Fourth Credit Note §§ 1, 3.

32.    Through the Loans,[1] Debtor agreed that if he defaulted, the unpaid principal and interest balances shall accrue interest at a default rate of 18.00% per annum or the highest rate permitted by applicable law, whichever is less.  Ex. A; Ex. C, First Security Agreement § 2.2; First Credit Note § 8; Ex. D, Second Security Agreement § 2.2; Second Credit Note § 8; Ex. E, Third Security Agreement § 2.2; Third Credit Note § 8; Ex. F, Fourth Security Agreement § 2.2; Fourth Credit Note § 8.

33.    Through the Loans, Debtor agreed to use the loan proceeds for certain limited farming purposes.  Section 5.7 of each Security Agreement provides, in part: "The Borrower will use the proceeds of Advances for general working capital purposes related to the Farm Products described."  "Farm products" is defined as "all farm products," whether or not they were already in existence or "to be planted, whether frown or to be drown, whether now owned or hereafter acquired, and wherever located." Section 5.7 also provides, "Such general working capital purposes shall not include any use for (i) non-farming purposes," among other non-permitted uses.  Through Sections 5.16 and 5.17 of each Security Agreement Debtor agreed to certain restrictions relating to agricultural use of the loan proceeds.  Ex. A; Ex. C, First Security Agreement §§ 5.7, 5.16, 5.17; Ex. D, Second Security Agreement §§ 5.7, 5.16, 5.17; Ex. E, Third Security Agreement §§ 5.7, 5.16, 5.17; Ex. F, Fourth Security Agreement §§ 5.7, 5.16, 5.17.

---

[1] The term "Loans" shall mean and refer to the First Loan, the Second Loan, the Third Loan, and the Fourth Loan and any two or more of them; the term "Loan Documents" shall mean and refer to the documents signed in connection with any of the Loans, including Exhibits B, C, D, E, F, and G hereto.

34.     Through Section 6 of each Security Agreement, Debtor agreed that the "Lender shall have and the Borrower hereby grants to the Lender a continuing best available lien on . . . Collateral."[2] Ex. A; Ex. C, First Security Agreement § 6; Ex. D, Second Security Agreement § 6; Ex. E, Third Security Agreement § 6; Ex. F, Fourth Security Agreement § 6.

35.     Debtor agreed through each Security Agreement, that Collateral constitutes:

> collectively, all right, title and interest of the Borrower in, to and under the following personal property, whether now or hereafter existing, whether planted or to be planted, whether grown or to be grown, whether now owned or hereafter acquired, and wherever located: all crops, including all annual and perennial crops and products thereof, either before or after harvest, and all additions and substitutions thereof, growing or planted, or to be grown or to be planted, on the real property. Also including collectively all warehouse receipts or other documents (negotiable or non-negotiable) issued for storage of such crops; all seed, fertilizer, chemicals and petroleum, and any other crop input products; all contract rights, chattel paper, documents, instruments, accounts, general intangibles, and cash and non cash proceeds from the sale, exchange, collection, or disposition of any of the crops. Also including all 'multiple-peri crop insurance policies' and other crop insurance policies, and all entitlements, rights to payment, and payments (in whatever form received, including, but not limited to, payments in cash or in kind) under any current or future state or federal governmental programs, including, but not limited to, governmental agricultural diversion, assistance, subsidy, deficiency, conservation, or disaster programs and the United States Department of Agriculture Farm Service Agency Feed Grain Program, and all proceeds of the foregoing.

Ex. A; Ex. C, First Security Agreement Ex. A Definitions; Ex. D, Second Security Agreement Ex. A Definitions; Ex. E, Third Security Agreement Ex. A Definitions; Ex. F, Fourth Security Agreement Ex. A Definitions.

36.     Under the Loan Documents, Debtor granted FBN Finance a security interest in the Collateral.  FBN Finance perfected its security interest by filling UCCs with the Texas Secretary of State.   FBN Finance incorporates the UCC filing it made with the Texas Secretary of State with regard to the Loans by reference and requests that judicial notice be taken of same.

---

[2] The term "Collateral" shall have the meaning assigned to it in the Loan Documents.

37. Through Section 12 of each Credit Note, Debtor agreed to a provision entitled "Business Purposes" which provides, "the Borrower represents to the Lender that the proceeds of this Note will be used solely for business purposes in conformity with the terms of the Agreement, and shall not be used for personal, family, or household purposes." Ex. A; Ex. C, First Credit Note § 12; Ex. D, Second Credit Note § 12; Ex. E, Third Credit Note § 12; Ex. F, Fourth Credit Note § 12.

38. Debtor obtained the Loans from FBN Finance by making false representations and promises as described above and as otherwise set forth in the Loan Documents, including those attached hereto as Exhibits B through G. FBN Finance relied on these and other representations and would not have loaned monies to Debtor without the representations made by Debtor.

39. Pursuant to the Loan Documents, Debtor was required to, among other things: (a) pay all amounts owed or due under each of the Loans in full by the Maturity Date; (b) use the loan proceeds in connection with working capital purposes in connection with Debtor's farming operation; (c) remain in the business in which Debtor was then engaged; (d) maintain insurance on the Collateral; (e) avoid any sale, assignment, transfer, set over to, grant a lien on, or otherwise encumber the Collateral except as otherwise provided in the Loan Documents; (f) keep the Collateral and records relating to same at the location set forth on the signature page of the Loan Documents; and (g) notify FBN Finance of any material change in Debtor's financial condition or business. Ex. A; Ex. C; Ex. D; Ex. E; Ex. F.

40. The Security Agreements provide that default in the payment when due of any principal and interest under the Loans, constitutes an "Event of Default" as defined by the Security Agreement. Ex. A; Ex. C, First Security Agreement § 7.1.1; Ex. D, Second Security Agreement § 7.1.1; Ex. E, Third Security Agreement § 7.1.1; Ex. F, Fourth Security Agreement § 7.1.1.

41.     Through Section 7.1.6 of each Security Agreement, Debtor agreed that any false representation also constitutes an "Event of Default" under each Loan.  The Loans contain other Events of Default, and Debtor defaulted under the Loans in numerous ways.  Ex. A; Ex. C, First Security Agreement § 7.1.6; Ex. D, Second Security Agreement § 7.1.6; Ex. E, Third Security Agreement § 7.1.6; Ex. F, Fourth Security Agreement § 7.1.6.

42.     Under the Loans, upon the occurrence of any Event of Default, as defined in the Loan Documents, FBN Finance, as the lender, may, among things, "declare any and all of the Obligations to be immediately due and payable," and "exercise any rights and remedies under the Loan Documents and applicable law."  Ex. A; Ex. C, First Security Agreement § 7.2; Ex. D, Second Security Agreement § 7.2; Ex. E, Third Security Agreement § 7.2; Ex. F, Fourth Security Agreement § 7.2.

43.     Under the Loans, upon the occurrence of any Event of Default, as defined by the Security Agreement, the Lender "shall have the right to take immediate possession of the Collateral."  Ex. A; Ex. C, First Security Agreement § 7.3; Ex. D, Second Security Agreement § 7.3; Ex. E, Third Security Agreement § 7.3; Ex. F, Fourth Security Agreement § 7.3.

44.     Through the Loans, Debtor agreed that he would pay reasonable attorneys' fees and expenses incurred or expended in connection with the enforcement of the Lender's rights under the Loan.  Ex. A; Ex. C, First Security Agreement § 2.4 Ex. D, Second Security Agreement § 2.4; Ex. E, Third Security Agreement § 2.4; Ex. F, Fourth Security Agreement § 2.4.

45.     On June 30, 2022, Debtor submitted to FBN Finance an Operating Line Post Plant Monitoring Worksheet.  Through the Operating Line Post Plant Monitoring Worksheet, Debtor represented information about the acreage and yields of his soybean farming. Debtor represented that his projected gross farm income was "exceeding ecpectations (sic.)."  He also represented that he

"cropped more than normal," as compared with his prior estimates.  A true and correct copy of the Operating Line Post Plant Monitoring Worksheet is attached hereto as "Exhibit G" and is incorporated herein by reference.

46.    Following origination of the First Loan, FBN Finance loaned $50,000.00 to Debtor pursuant to the terms of the First Loan.  Ex. A.

47.    Following origination of the Second Loan, FBN Finance loaned $100,000 to Debtor pursuant to the terms of the Second Loan.  Ex. A.

48.    Following origination of the Third Loan, FBN Finance loaned $200,000 to Debtor pursuant to the terms of the Third Loan.  Ex. A.

49.    Following origination of the Fourth Loan, FBN Finance loaned $150,000 to Debtor pursuant to the terms of the Fourth Loan.  Ex. A.

50.    Debtor failed to pay amounts due under both the Loans by the March 1, 2023 maturity date, constituting an Event of Default as defined by the Loans.  FBN Finance provided Debtor with written notice of the amounts then past due and owing on or about April 3, 2023; a written notice of default and demand for payment was made on or about July 6, 2023 with regard to the Loans.  Debtor failed to respond to either communication by payment or otherwise.  Ex. A.

51.    As of the date of the Complaint, Debtor has failed to pay the past due amounts, in whole or in part, and has an outstanding balance owed to FBN Finance of at least $550,964.61 under the Loans, after allowing for all lawful adjustments and credits.  Ex. A.

52.    Debtor remains in default on the Loans based on his failure to pay amounts due, among other defaults.  Ex. A.

53.    Debtor subsequently filed for Chapter 7 relief and filed his Schedules and Statement of Financial Affairs, among other things.  FBN Finance incorporates herein by reference the papers

filed by Debtor in this Chapter 7 Case and requests that judicial notice be taken of same.

54.     In Schedule A/B, Part 6, par. 46, Debtor represented, under penalty of perjury, that he has no legal or equitable interest in any farm related property.  Ex. A.

55.     In Schedule A/B, Part 6, par. 48, Debtor represented, under penalty of perjury, that he does not have any growing or harvested crops.  Ex. A.

56.     In Schedule A/B, Part 6, par. 49, Debtor represented, under penalty of perjury, that he has no farm equipment, implements, machinery, fixtures, or tools of trade.  Ex. A.

57.     In Schedule A/B, Part 6, par. 50, Debtor represented, under penalty of perjury, that he has no farm supplies or chemicals.  Ex. A.

58.     In Schedule A/B, Part 6, par. 51, Debtor represented, under penalty of perjury, that he has no farm related property not already listed.  Ex. A.

59.     In Schedule A/B, Part 6, par. 52, Debtor represented, under penalty of perjury, that the value of his farm related assets is $0.  Ex. A.

60.     Debtor does not list the Loans as a secured claim on Schedule D.  Ex. A.

61.     Debtor does not list the Loans as an unsecured claim on Schedule E/F.  Ex. A.

62.     In Schedule I, Debtor represented, under penalty of perjury, his total combined monthly income is $5,579.73.  Ex. A.

63.     On Debtor's Official Form 107 Statement of Financial Affairs, par. 4, Debtor represented, under penalty of perjury, that he did not have any income from employment or from operating a business during this year or the two previous calendar years.  This conflicts with the written representations made by Debtor in the Application, in which Debtor represented that his gross farm annual income for calendar year 2021 was $825,000.00, and his non-farm annual income for calendar year 2021 was $96,000.00.  Ex. A; Ex. B, Application.

64.    Debtor's representation in his Official Form 107 Statement of Financial Affairs, par. 4, under penalty of perjury, that he did not have any income from employment or from operating a business during this year or the two previous calendar years, also conflicts with his the written representations made by Debtor in his June 30, 2022 Operating Line Post Plant Monitoring Worksheet.   For example, in the Operating Line Post Plant Monitoring Worksheet, Debtor represented information about the acreage and yields of his soybean farming, stating, *e.g.*, that: (a) his projected gross farm income was "exceeding ecpectations (sic.);" and (b) he "cropped more than normal," as compared with his prior estimates.  Ex. A; Ex. G.

65.    In Debtor's Official Form 107 Statement of Financial Affairs, par. 11, Debtor represented, under penalty of perjury, that the only business he operated as a sole proprietor, or self-employed profession, partner, etc., was a clothing store named Blu Chandelier LLC.  He did not disclose any farming-related business activities.  This conflicts with his the written representations that Debtor made in his Application on January 18, 2022, that he farmed in Ellis County, Texas, he began farming in 2018, and his primary commodity is soybean farming. Ex. A; Ex. B, Application. This also conflicts with the written representations Debtor made on January 18, 2022, in which he represented that his gross farm annual income for calendar year 2021 was $825,000.00 and his non-farm annual income for calendar year 2021 was $96,000.00.  Ex. A; Ex. B, Application.

66.    Debtor's representation in his Official Form 107 Statement of Financial Affairs, par. 11, under penalty of perjury, that he only operated one business, which was a clothing store, also conflicts with the written representations made by Debtor on January 26, 2022, February 28, 2022, and May 31, 2022 in Section 5.7 of each Security Agreement where Debtor represented, "The Borrower will use the proceeds of Advances for general working capital purposes related to the Farm Products described."  Ex. A; Ex. C, First Security Agreement §§ 5.7, 5.16, 5.17; Ex. D, Second

Security Agreement §§ 5.7, 5.16, 5.17; Ex. E, Third Security Agreement §§ 5.7, 5.16, 5.17; Ex. F,

Fourth Security Agreement §§ 5.7, 5.16, 5.17.

67.     Debtor's representation in his Official Form 107 Statement of Financial Affairs, par.

11, under penalty of perjury, that he only operated one business, which was a clothing store, also

conflicts with his Written Representations on January 26, 2022, February 28, 2022, and May 31,

2022 through Section 12 of each Credit Note, where Debtor agreed he "represents to the Lender that

the proceeds of this Note will be used solely for business purposes in conformity with the terms of

the Agreement, and shall not be used for personal, family, or household purposes." Ex. A; Ex. C,

First Credit Note § 12; Ex. D, Second Credit Note § 12; Ex. E, Third Credit Note § 12; Ex. F, Fourth

Credit Note § 12.

68.     Debtor's representation in his Official Form 107 Statement of Financial Affairs, par.

11, under penalty of perjury, that he only operated one business, which was a clothing store, also

conflicts with Debtor's June 30, 2022 representation on his Operating Line Post Plant Monitoring

Worksheet, where he represented information about the acreage and yields of his soybean farming.

Debtor represented that: (a) his projected gross farm income was "exceeding ecpectations (sic.);"

and (b) he "cropped more than normal," as compared with his prior estimates. Ex. A; Ex. G.

69.     In Debtor's Official Form 108 Statement of Intention, Debtor did not disclose FBN

Finance as having a secured claim, and Debtor did not disclose FBN Financial as a secured creditor

on his schedules or otherwise.

70.     Debtor's misrepresentations to FBN Finance constitute an Event of Default as defined

by the Security Agreement. Ex. A; Ex. C, First Security Agreement § 7.1.6; Ex. D, Second Security

Agreement § 7.1.6; Ex. E, Third Security Agreement § 7.1.6; Ex. F, Fourth Security Agreement §

7.1.6.

71.     Based on Debtor's representations in his bankruptcy case made under penalty of perjury, FBN Finance asserts that Debtor made misrepresentations to FBN Finance relating to his supposed farming business, and Debtor's assets and income, in conjunction with obtaining and executing the Loans.  FBN Finance relied upon Debtor's representations in entering into the Loans and in making advances to the Debtor.  FBN Finance has been harmed by Debtor, and the Loans are under-secured or unsecured.  Ex. A; Ex. B; Ex. C; Ex. D; Ex. E; Ex. F; Ex. G.

72.     As of the date of this Complaint, FBN Finance has been damaged in the amount of at least $550,964.61 under the Loans, plus accrued, unpaid interest, fees, expenses, and costs due to Debtor's misrepresentations and such debt is non-dischargeable pursuant to 11 U.S.C. § 523, as set forth below.  Debtor is liable for, and owes, the entire indebtedness owed or incurred in connection with the Loans to FBN Finance, and all conditions precedent to FBN Finance recovering, and being entitled to, a judgment for such indebtedness have occurred or have been waived.  Ex. A.

73.     For at least the foregoing reasons, and for the causes of action below: (a) FBN Finance is entitled to a judgment against Debtor with regard to the indebtedness owed or incurred in connection with the Loans, which indebtedness is at least $550,964.61, plus accrued, unpaid interest, fees, expenses, and costs; and (b) the indebtedness owed and incurred in connection with the Loans should be excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), and 523(a)(6).

## IV.  CAUSES OF ACTION

**A.      COUNT 1:   THE DEBT OWED TO FBN FINANCE IS EXCEPTED FROM DISCHARGE PURSUANT TO U.S.C. 523(A)(2)(A).**

74.     FBN Finance realleges and incorporates herein by reference the foregoing allegations.

75.     Debtor obtained money, property, services, or an extension, renewal, or refinancing of credit from FBN Finance by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.  Ex. A.

76.     For example, through his written Application, Debtor falsely represented, in writing, that he engaged in farming in Ellis, Texas, and that he sought loans for purposes of farming.  He specifically misrepresented that he farmed soybeans, and had farmed soybeans since 2018.  Ex. A; Ex. B, Application.

77.     Debtor also represented that he would, and he agreed to, use the loan proceeds for certain limited farming purposes.  Section 5.7 of each Security Agreement provides, in part: "The Borrower will use the proceeds of Advances for general working capital purposes related to the Farm Products described."  Section 5.7 also provides, "Such general working capital purposes shall not include any use for (i) non-farming purposes," among other non-permitted uses.  Through Sections 5.16 and 5.17 of each Security Agreement Debtor agreed to certain restrictions relating to agricultural use of the loan proceeds.  Ex. A; Ex. C, First Security Agreement §§ 5.7, 5.16, 5.17; Ex. D, Second Security Agreement §§ 5.7, 5.16, 5.17; Ex. E, Third Security Agreement §§ 5.7, 5.16, 5.17; Ex. F, Fourth Security Agreement §§ 5.7, 5.16, 5.17.

78.     Through each Credit Note, Debtor also falsely represented that he would use the loan proceeds exclusively for farming purposes. Ex. A; Ex. C, First Credit Note § 12; Ex. D, Second Credit Note § 12; Ex. E, Third Credit Note § 12; Ex. F, Fourth Credit Note § 12.

79.     Through each Security Agreement, Debtor also falsely represented that he was providing a security interest to the lender in Collateral, as defined in the Loans.  Ex. A; Ex. C, First Security Agreement Ex. A Definitions; Ex. D, Second Security Agreement Ex. A Definitions; Ex. E, Third Security Agreement Ex. A Definitions; Ex. F, Fourth Security Agreement Ex. A Definitions.

80.     In extending credit pursuant to the Loans, FBN Finance reasonably relied upon the materially false representations made by Debtor.  Ex. A.

81.     Debtor's false representations induced FBN Finance into entering into the four Loans. Ex. A.

82.     If Debtor had not made these misrepresentations, then FBN Finance would not have been induced into, and would not have made, the Loans.  Ex. A.

83.     Debtor intentionally made misrepresentations to FBN Finance so that he could obtain and utilize the proceeds from the Loans for personal or other uses that were prohibited by the express terms of the Loans.  Ex. A.

84.     FBN Finance relied on these and other representations and would not have loaned Debtor money without the representations made by Debtor.  *See also, e.g.,* the other allegations set forth above, which allegations are incorporated herein by reference along with the other allegations made above.  Ex. A.

85.     As a result of Debtor's false pretenses, a false representation(s), or actual fraud, Debtor obtained money, property, services, or an extension, renewal, or refinancing of credit from FBN Finance, and FBN Finance was harmed as a result.  Debtor's debts to FBN Finance should be excepted from discharge.  Ex. A.

86.     As of the date of this Complaint, FBN Finance has been damaged in the amount of at least $550,964.61 under the Loans, plus accrued, unpaid interest, fees, expenses, and costs due to Debtor's misrepresentations and such debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).  Ex. A.

**B.     COUNT 2:   THE DEBT OWED TO FBN FINANCE IS EXCEPTED FROM DISCHARGE PURSUANT TO U.S.C. 523(A)(2)(B).**

87.     FBN Finance realleges and incorporates herein by reference the foregoing allegations.

88.     Debtor obtained money, property, services, or an extension, renewal, or refinancing of credit from FBN Finance by use of a statement in writing that was materially false, respecting the debtor's or an insider's financial condition, on which FBN Finance reasonably relied, and that the debtor caused to be made or published with the intent to deceive.  Ex. A.

89.     For example, through his written Application, Debtor falsely represented, among other things, that: (a) he was single; (b) began farming in 2018; (c) he farmed in Ellis County, Texas; (d) his primary commodity was soybean farming; (e) his total asset value was $573,000.00; (f) his total liability value was $86,000.00; (g) his gross farm annual income for 2021 was $825,000.00; and (h) his non-farm annual income for 2021 was $96,000.00. Ex. A; Ex. B, Application. *See also, e.g.,* the other allegations set forth above, which allegations are incorporated herein by reference along with the other allegations made above.  Ex. A.

90.     In extending credit pursuant to the Loans, FBN Finance reasonably relied upon the materially false representations made by Debtor.  Ex. A.

91.     Debtor's false representations induced FBN Finance into making and entering into the four Loans.  Ex. A.

92.     If Debtor had not made misrepresentations to FBN Finance, then FBN Finance would not have been induced into, and would not have made, the Loans.  Ex. A.

93.     Debtor intentionally made misrepresentations to FBN Finance so that he could obtain and utilize the proceeds from the Loans for personal or other uses that were prohibited by the express terms of the Loans.

94.     As a result of Debtor's misrepresentations, Debtor obtained money, property, services, or an extension, renewal, or refinancing of credit from FBN Finance, and FBN Finance was harmed as a result. Debtor's debts to FBN Finance should be excepted from discharge.  Ex. A.

95.     As of the date of this Complaint, FBN Finance has been damaged in the amount of at least $550,964.61 total on the Loans, plus accrued, unpaid interest, fees, expenses, and costs due to Debtor's misrepresentations and such debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).  Ex. A.

C.    **COUNT 3:   THE DEBT OWED TO FBN FINANCE IS EXCEPTED FROM DISCHARGE PURSUANT TO U.S.C. 523(A)(4).**

96.     FBN Finance incorporates herein by reference the foregoing allegations.

97.     Upon information and belief, Debtor has engaged in fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.  For example, pursuant to the Loan Documents, Debtor was required to, among other things: (a) pay all amounts owed or due under each of the Loans in full by the Maturity Date; (b) use the loan proceeds in connection with working capital purposes in connection with Debtor's farming operation; (c) remain in the business in which Debtor was then engaged; (d) maintain insurance on the Collateral; (e) avoid any sale, assignment, transfer, set over to, grant a lien on, or otherwise encumber the Collateral except as otherwise provided in the Loan Documents; (f) keep the Collateral and records relating to same at the location set forth on the signature page of the Loan Documents; and (g) notify FBN Finance of any material change in Debtor's financial condition or business.  Ex. A; Ex. C; Ex. D; Ex. E; Ex. F.  In addition, Debtor owed fiduciary duties to FBN Finance as a creditor in the bankruptcy case.  *See also, e.g.,* the other allegations set forth above, which allegations are incorporated herein by reference along with the other allegations made above.

98.     Upon information and belief, Debtor committed conversion and/or theft of real or personal property in which FBN Finance had an interest.  *See* Tex. Civ. Prac. & Rem. Code §§ 134.001(2), 134.002(a), & 134.004.  For example, upon information and belief, Debtor received loan proceeds and was required to use such proceeds solely for working capital purposes associated with

Debtor's farming operation in Ellis County, Texas.  Debtor converted the loan proceeds, and used

the loan proceeds for impermissible purposes, without FBN Finance's knowledge or permission;

instead, it is understood that Debtor paid other creditors or persons and/or retained the proceeds

contrary to the parties' agreements and/or engaged in dispositions or other transfers of Collateral,

including proceeds, and property in which FBN Finance had an interest contrary to the parties'

agreements and/or applicable law.  Ex. A.

99.     As a result of these and other acts or omissions, upon information and belief, Debtor

has engaged in fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

Debtor's debts to FBN Finance should be excepted from discharge.  Ex. A.

100.    As of the date of this Complaint, FBN Finance has been damaged in the amount of at

least $550,964.61 total on the Loans, plus accrued, unpaid interest, fees, expenses, and costs due to

Debtor's misrepresentations and such debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

Ex. A.

**D.    COUNT 4:   THE DEBT OWED TO FBN FINANCE IS EXCEPTED FROM
DISCHARGE PURSUANT TO U.S.C. 523(A)(6).**

101.    FBN Finance incorporates herein by reference the foregoing allegations.

102.    Upon information and belief, Debtor has caused willful and malicious injury to FBN

Finance or to the property of another.  For example, FBN Finance owned, possessed, or had the right

to immediate possession of certain personal property. Debtor has wrongfully exercised dominion or

control over the property in which FBN Finance had an interest (*e.g.*, Debtor received and utilized

loan proceeds or property in which FBN Finance has an interest contrary to the parties' agreements

and/or without remitting same to FBN Finance).  Upon information and belief, Debtor converted

FBN Finance's property willfully and maliciously, with actual intent to permanently deprive FBN

Finance of its property.  Ex. A.

103.    As a result, FBN Finance suffered injuries, including the loss of value of the property

in which FBN Finance had an interest and the loss of use of certain property.  Debtor's debts to FBN

Finance should be excepted from discharge.  Ex. A.

104.    As of the date of this Complaint, FBN Finance has been damaged in the amount of at

least $550,964.61 total on the Loans, plus accrued, unpaid interest, fees, expenses, and costs due to

Debtor's misrepresentations and such debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

Ex. A.

**E.    COUNT 5:  BREACH OF CONTRACT CLAIM**

105.    FBN Finance incorporates herein by reference the foregoing allegations.

106.    The Loan Documents are valid contracts between FBN Finance and Debtor, and FBN

Finance is the owner and holder of the Loans and the Loan Documents.  Ex. A.

107.    Debtor defaulted and breached his agreements with FBN Finance, including

breaching the Loan Documents by, among other things, failing to make payments on the Loans as

they became due. Debtor also failed to: (a) use the loan proceeds in connection with working capital

purposes in connection with Debtor's farming operation; (b) remain in the business in which Debtor

was then engaged; (c) maintain insurance on the Collateral; (d) avoid any sale, assignment, transfer,

set over to, grant a lien on, or otherwise encumber the Collateral except as otherwise provided in the

Loan Documents; (e) keep the Collateral and records relating to same at the location set forth on the

signature page of the Loan Documents; and (f) notify FBN Finance of any material change in

Debtor's financial condition or business.  Ex. A; Ex. C; Ex. D; Ex. E; Ex. F.

108.    As a result of Debtor's defaults, FBN Finance suffered harm.  As of the date of this

Complaint, FBN Finance has been damaged in the amount of at least $550,964.61 total on the Loans,

plus accrued, unpaid interest, fees, expenses, and costs due to Debtor's misrepresentations and such

debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).  Ex. A.

## V.  ALTERNATIVE PLEADING; RESERVATION OF RIGHTS

109.    The allegations made and claims asserted above are made based on the information

obtained to date.  If any of the causes of action or allegations contained in this pleading are

inconsistent or are required to be alleged in the alternative, then they shall be considered as being

pled in the alternative, and no waiver of any claim is intended as a result of the content of any other

claim.  FBN Finance specifically reserves the right to amend or supplement this filing as permitted

by applicable authority, agreement of the parties, or Court order.

## VI.  REQUEST FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff FBN Finance, LLC respectfully

requests that:

(i)      Debtor and Defendant, Timothy Banks, be cited to answer and appear;

(ii)     That this Court render judgment in favor of FBN Finance, LLC and against Debtor

Timothy Banks for the total amount of indebtedness owed or incurred in connection with the Loans,

which indebtedness totals at least $550,964.61 as of the date of this Complaint, plus accrued, unpaid

interest at the default rate of 18.00% per annum or the highest rate permitted by law, whichever is

less, plus fees, expenses, and costs incurred by FBN Finance in connection with the Loans, and that

the Court except the judgment from discharge;

(iii)    The Court except the indebtedness owed by Debtor to FBN Finance, LLC from

discharge pursuant to 11 U.S.C. § 523(a)(2)(A), which indebtedness totals at least $550,964.61 as of

the date of this Complaint, plus accrued, unpaid interest, which accrues at the default rate of 18.00%

or the highest rate permitted by law, whichever is less, plus fees, expenses, and costs incurred by FBN Finance in connection with the Loans;

(iv)    The Court except the debts owed to FBN Finance, LLC from discharge pursuant to 11 U.S.C. § 523(a)(2)(B), which indebtedness totals at least $550,964.61 as of the date of this Complaint, plus accrued, unpaid interest, which accrues at the default rate of 18.00% or the highest rate permitted by law, whichever is less, plus fees, expenses, and costs incurred by FBN Finance in connection with the Loans;

(v)    The Court except the debts owed to FBN Finance, LLC from discharge pursuant to 11 U.S.C. § 523(a)(4), which indebtedness totals at least $550,964.61 as of the date of this Complaint, plus accrued, unpaid interest, which accrues at the default rate of 18.00% or the highest rate permitted by law, whichever is less, plus fees, expenses, and costs incurred by FBN Finance in connection with the Loans;

(vi)    The Court except the debts owed to FBN Finance, LLC from discharge pursuant to 11 U.S.C. § 523(a)(6), which indebtedness totals at least $550,964.61 as of the date of this Complaint, plus accrued, unpaid interest, which accrues at the default rate of 18.00% or the highest rate permitted by law, whichever is less, plus fees, expenses, and costs incurred by FBN Finance in connection with the Loans;

(vii)    The Court award FBN Finance, LLC its reasonable and necessary attorney's fees, its expenses, and its costs; and

(viii)    The Court award FBN Finance such other and further relief to which it may be entitled.

Dated:  November 13, 2023                    Respectfully submitted,

                                            DICKINSON WRIGHT PLLC
                                            Stephanie E. Kaiser (Texas Bar I.D. 24013633)
                                            607 W. 3rd Street, Suite 2500
                                            Austin, Texas 78701
                                            Telephone: (512) 770-4220
                                            Facsimile: (844) 670-6009
                                            skaiser@dickinson-wright.com

                                            By: _/s/ Stephanie E. Kaiser_____
                                                Stephanie E. Kaiser

                                            *ATTORNEYS FOR FBN FINANCE, LLC*